**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORIENT TURISTIK MAGAZACILIK SAN VE TIC LTD. STI,<br><br>     Plaintiff,<br><br>v.<br><br>AYTEK USA, INC. d/b/a AYTEK RUGS, *et al.*,<br><br>     Defendants. | Civil Action No. 22-4864 (SDW) (JBC)<br><br>**OPINION**<br><br>May 18, 2023 |

**WIGENTON**, District Judge.

  Before this Court is Plaintiff Orient Turistik Magazacilik San ve Tic Ltd. STI's ("Plaintiff" or "Orient") Motion for a Preliminary Injunction (D.E. 21 ("Motion")) pursuant to Federal Rule of Civil Procedure ("Rule") 65 and Local Civil Rule ("Local Rule") 65.1, against Defendants Mustafa Aslanhan ("Aslanhan"), Umit Kucukkaraca ("Kucukkaraca," together with Aslanhan, "Individual Defendants"), Aytek USA, Inc. ("Aytek"), and Istanbul Rugs, LLC ("Istanbul Rugs," together with Individual Defendants and Aytek, "Defendants"). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Plaintiff's Motion is **GRANTED**.

1

I.  **FACTUAL AND PROCEDURAL HISTORY**[1]

    **A. Orient and the Customer List**

In the 1880s, the Sefer family created a business selling high-quality, handmade carpets. (D.E. 21-2 ¶¶ 4–5.) Over the next century, generations of the Sefer family built up their brand name, reputation, and goodwill as carpet dealers. (*Id.*) In 1987, the Sefer family business began operating under the trade name "Orient Handmade Carpets," and since then, Orient has continued to develop the Sefer family's reputation and goodwill under the Orient brand. (*Id.* ¶¶ 3–5.)

Orient is based in Istanbul, Turkey, where it maintains a showroom of carpets. (*Id.* ¶ 3; D.E. 21-3 ¶ 3.) Among other means of sale, Orient arranges for tourists to visit its showroom to purchase carpets. (D.E. 21-3 ¶ 3.) Through its sales efforts, Orient has compiled a list of customers living in the United States ("Customer List"). (*Id.* ¶ 4.) The Customer List purportedly contains contact information—including "customer names, email addresses, phone numbers, and residential addresses"—for over 10,000 of Orient's customers who reside in the United States. (*Id.* ¶¶ 4–5.) Orient uses the Customer List to maintain contact with its repeat customers and to eventually sell them additional carpets. (*Id.* ¶ 8.) Orient has taken several steps to protect the Customer List from disclosure, including by:

---

[1] On a motion for a preliminary injunction, this Court has discretion "to assess whether, and to what extent, affidavits and other hearsay materials are 'appropriate given the character and objectives of the injunctive proceeding.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718–19 (3d Cir. 2004) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (3d Cir. 1986)). The Third Circuit has recognized that "[t]he weight to which such materials are entitled may . . . vary greatly depending on the facts and circumstances of a given case." *Id.* Here, Orient has submitted declarations and exhibits to corroborate the sworn statements contained in the declarations. (*See generally* D.E. 21-2, 21-3, 21-4, 27-1, 27-2, 27-3.) Orient has provided several emails and text messages from its customers, (D.E. 21-3 at 14–35); photographic evidence of vehicles used by the Individual Defendants, (*id.* at 24; D.E. 21-4 at 1–3); records indicating that the vehicles used by the Individual Defendants are owned by Istanbul Rugs, (D.E. 21-4 at 7–10); and consignment agreements between Aytek, Istanbul Rugs, and the Individual Defendants, (D.E. 27-2 at 2–19; D.E. 27-3 at 2–18). Defendants have not disputed any of the foregoing facts. Accordingly, the facts in this Opinion derive largely from the declarations and exhibits submitted with Orient's Motion (D.E. 21-2, 21-3, 21-4) and the declaration and exhibits submitted with Orient's reply in support of the Motion (D.E. 27-1, 27-2, 27-3).

> (i) maintaining the Customer List solely in electronic form on a password-protected computer that is not connected to the Internet or a printer; (ii) protecting the Customer List file with a separate password; (iii) limiting the number of Orient employees with access to the passwords for the computer and the Customer List; and (iv) ordering those employees to hold the information in strict confidence.[2]

(*Id.* ¶ 6.)

### B. The Scheme

From January 2015 until his termination in January 2022, Kucukkaraca was employed as a sales representative at Orient. (*Id.* ¶ 9.) Prior to his departure from Orient, Kucukkaraca stole the Customer List. (*Id.* ¶ 12.) Orient did not learn of Kucukkaraca's theft until on or about April 10, 2022, when a customer called to explain that she had purchased two counterfeit Orient carpets from Kucukkaraca and Aslanhan. (*Id.* ¶ 13.) Thereafter, several customers contacted Orient with similar stories and testimonials. (*Id.* ¶¶ 14–15.)

After investigating the customer complaints, Orient determined that the Individual Defendants—assisted by Aytek and Istanbul Rugs—misappropriated the Customer List to further an ongoing bait-and-switch campaign. (*Id.* ¶¶ 15–16, 22, 24–25.) Specifically, Orient discovered that the Individual Defendants have called, sent text messages to, and made scheduled and unannounced visits at the residences of Orient's customers across several states. (*Id.* ¶ 16.) During those communications and encounters, the Individual Defendants misrepresented that they were

---

[2] Orient also protects its customer information from disclosure during the shipping process by:

> (i) shipping carpets to its United States affiliate in bulk; (ii) using a number-coded sales manifest (instead of customer names/addresses) for purposes of distributing the carpets to individual United States customers; and (iii) providing the customer index for the manifest to its United States-based affiliate separately to ensure that no Turkish shipping companies obtain access to specific customer information.

(*Id.* ¶ 7.)

representatives from Orient selling Orient carpets, when in fact the Individual Defendants were attempting to sell carpets from Aytek and Istanbul Rugs.[3] (D.E. 21-3 ¶¶ 15–16, 25–26.) Orient contends that Defendants' scheme has caused several of its United States customers to "purchase[] rugs under the mistaken belief that they were purchasing Orient handmade carpets," and to exchange "older, authentic Orient carpets (purchased in Turkey or through authorized sales in the United States) believing that they were receiving, in exchange, new Orient carpets when in fact they were receiving Aytek's or Istanbul's lesser quality rugs." (*Id.* ¶ 24.) As a result of Defendants' scheme, Orient asserts that its customers have now lost faith in its brand, reputation, and goodwill. (*Id.* ¶ 26.)

On August 3, 2022, Orient filed its eight-count Complaint alleging primary and contributory violations of the Lanham Act (Counts 1 and 2); violation of the Defend Trade Secrets Act ("DTSA") (Count 3); violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count 4); violations of statutory and common law unfair competition (Count 5); misappropriation of trade secrets in violation of state laws (Count 6); civil conspiracy (Count 7); and aiding and abetting the commission of civil torts (Count 8).[4] (D.E. 1.) On October 28, 2022, Orient moved for a preliminary injunction alleging that "Defendants ha[d] ramped up their activities contacting Orient's customers" since the outset of the present litigation. (D.E. 21-1 at 7.)

## II. STANDARD OF REVIEW

---

[3] In support of its Motion, Orient included documents from Aytek's and Istanbul Rugs' initial disclosures under Rule 26(a)(1). (D.E. 27-1, 27-2, 27-3.) Those documents indicate that Aytek consigned its carpets to Aslanhan, and that Istanbul Rugs consigned its carpets and leased its vehicles to other individuals associated with the Defendants.

[4] On April 13, 2023, Orient amended its Complaint by adding three additional defendants: Haluk Ilikyel, Alper Yildirim, and Mehmet Mamir. (*See generally* D.E. 42 ("Amended Complaint").) The Amended Complaint alleges the same eight counts as in the Complaint. (*Id.*)

Rule 65 governs a court's issuance of a preliminary injunction. Fed. R. Civ. P. 65; L. Civ. R. 65.1. "A preliminary injunction is an extraordinary remedy that is never to be awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). When considering whether to grant a preliminary injunction, courts must decide whether the party seeking the injunction has shown: "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (quoting *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010)). The Third Circuit has placed particular weight on the first two factors, instructing that it "cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)); *see also Juul Labs, Inc. v. 4X PODS.*, 439 F. Supp. 3d 341, 350 (D.N.J. 2020) ("A court will consider all four factors, but the first two are essential . . . A court may not grant injunctive relief, 'regardless of what the equities seem to require,' unless plaintiffs carry their burden of establishing both a likelihood of success and irreparable harm." (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000))). If a court finds that the first two factors weigh in favor of the moving party, the "court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

**III.  DISCUSSION**

### A. Likelihood of Success on the Merits[5]

A party moving for a preliminary injunction bears the burden to prove its likelihood of success on the merits of its case. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)). The moving party must "'demonstrate that it *can* win on the merits,' which involves a showing that its chances of establishing each of the elements of the claim are 'significantly better than negligible.'" *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021) (quoting *Reilly*, 858 F.3d at 179 n.3). Likelihood of success, however, does not require "a more-likely-than-not showing of success." *Reilly*, 858 F.3d at 179 n.3. Rather, "a sufficient degree of success for a strong showing exists if there is a 'reasonable chance, or probability, of winning.'" *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc)).

Here, Orient has shown a likelihood of success on at least two of its claims.[6]

1. <u>Violations of the Lanham Act</u>

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), states, in relevant part:

> (a) Civil action
>
> > (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any

---

[5] Defendants' submissions in opposition to the Motion largely do not contest Orient's likelihood of success on the merits. (*See generally* D.E. 25, 26.)

[6] Importantly, "[w]here a [p]laintiff is seeking an injunction on multiple claims, the Court may address the reasonable probability of success on the merits on only one claim, so long as that claim is connected to the injunctive relief sought." *Deluhery v. Unifiednames, Inc.*, No. 07-2158, 2007 WL 9789620, at *2 (D.N.J. Sept. 14, 2007) (citing *Amazon, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001)); *see also Selvaggi v. Borough of Point Pleasant Beach*, No. 22-708, 2022 WL 1664623, at *3 (D.N.J. May 25, 2022) (noting that plaintiffs moving for a preliminary injunction "need not show a likelihood of success as to every claim and every allegation").

> false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).  Section 1125(a) thus "creates two distinct bases of liability:  false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992)).  Orient has established a reasonable likelihood of success on its false advertising claim.[7]

To prevail on a claim for false advertising, a plaintiff must establish that:  (1) "the defendant has made false or misleading statements as to his own product [or another's]"; (2) "there is actual deception or at least a tendency to deceive a substantial portion of the intended audience"; (3) such "deception is material in that it is likely to influence purchasing decisions"; (4) "the advertised goods traveled in interstate commerce"; and (5) "there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220,

---

[7] Orient's moving brief characterizes its claim as one for "unfair competition" and describes Defendants' relevant misconduct as "palming off" Orient's goods as their own. (D.E. 21-1 at 20.)  Orient's reply brief specifically alleges that Defendants engaged in "contributory false advertising" under the Lanham Act. (D.E. 27 at 4.)  This Court, then, construes Orient's claim as one for false advertising. *See Lexmark Int'l*, 572 U.S. at 136 ("[T]he Lanham Act treats false advertising as a form of unfair competition."); *see also NY Machinery Inc. v. Korean Cleaners Monthly*, No. 17-12269, 2018 WL 2455926, at *3 (D.N.J. May 31, 2018) ("Unfair competition claims brought under § 43(a) of the Lanham Act generally follow the same analysis as false advertising claims." (collecting cases)).

7

226 n.7 (3d Cir. 2017) (alteration in original) (quoting *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91–92 (3d Cir. 2000)). "A plaintiff can prevail in a false advertising action if it proves the advertisement 'is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive customers.'" *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).

Here, Orient has shown that the Individual Defendants have, at a minimum, made ambiguous statements that deceived customers. Specifically, the Individual Defendants—claiming to be representatives from Orient—called, sent text messages to, and approached several of Orient's customers.[8] (D.E. 21-3 ¶¶ 16, 30.) The Individual Defendants then purported to sell carpets from Orient, when in reality, they were selling carpets of allegedly inferior quality from Aytek and Istanbul Rugs. (*Id.* ¶¶ 13–16, 22, 24–25.) The Individual Defendants' statements were ambiguous and deceived at least five of Orient's customers into either buying inferior-quality carpets or trading in older Orient carpets under the mistaken belief that they would receive new Orient carpets. (*Id.* ¶ 24.) Orient has further shown that Aytek and Istanbul Rugs actively encouraged and assisted the Individual Defendants' misrepresentations by providing them with carpets and vehicles.[9] (*See generally* D.E. 21-4, 27-2, 27-3.)

---

[8] Orient has provided several emails and text messages that demonstrate the Individual Defendants' conduct. For instance, one text message states, "this is Mustafa from Turkey from handmade carpet art gallery where you purchased your handmade carpet." (D.E. 21-3 ¶ 16.) The sender of the text message seeks to "visit [the customer] to say hello and show [the customer] our new beautiful carpet collection." (*Id.*) Another text message from "Mehmet, [the customer's] rug dealer guy from Istanbul[,] Turkey," claims that the customer "ha[d] been in [his] store and made some rug [purchases] when [the customer] w[as] in Istanbul." (*Id.* ¶ 30.) The email testimonials from Orient's customers demonstrate a similar pattern: the Individual Defendants, claiming to be representatives from Orient selling Orient's carpets, would routinely call, text, and approach Orient's U.S. customers. (*Id.*)

[9] The Third Circuit has expressly held that a "principal will be liable in an action brought pursuant to section 43(a) of the Lanham Act based on the agents' *foreseeable* infringing actions upon which it would be reasonable for the third party to rely, provided the third party has no notice that the representations are unauthorized." *Am. Tel. & Tel.*

Accordingly, Orient has demonstrated a likelihood of success on the merits of its claim for false advertising.

2. <u>Violations of the DTSA</u>

Even if Orient had not established a reasonable likelihood of success on its claim for false advertising, it has done so for its claims under the DTSA. To prevail on a claim for misappropriation of trade secrets, a plaintiff must "demonstrate (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019) (citing 18 U.S.C. §§ 1836(b)(1), 1839(1)).

a. *Trade Secret*

To establish a likelihood of success on the merits of its claims under the DTSA, a plaintiff must first "sufficiently identify the information it claims as a trade secret." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). The DTSA defines a trade secret as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing ... [that] the owner thereof has taken reasonable measures to keep ... secret; and ... derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

---

*Co. v. Winback & Conserve Prog., Inc.*, 42 F.3d 1421, 1438 (3d Cir. 1994). Here, Orient has provided sufficient evidence to show a reasonable likelihood that Aytek and Istanbul Rugs acted as principals of the Individual Defendants.

9

18 U.S.C. § 1839(3).  The moving party must then show that the information that it claims to be a trade secret "is indeed protectable as such."  *Thanoo*, 999 F.3d at 905.  Courts will "consider whether the owner of the information 'has taken reasonable measures to keep . . . [it] secret' and whether the 'information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by," others who could financially benefit from the information.  *Id.* (alterations in original) (quoting 18 U.S.C. § 1839(3)).  Courts in this District regularly hold that customer lists constitute trade secrets under the DTSA.  *Beta Pharma, Inc. v. InventisBio (Shanghai) Co., Ltd.*, No. 21-5103, 2022 WL 17547265, at *3 (D.N.J. Dec. 8, 2022) ("Trade secrets may include proprietary business information like customer lists. . . ." (citing *IDT Corp. v. Unlimited Recharge, Inc.*, No. 11-4992, 2012 WL 4050298, at *6 (D.N.J. Sept. 13, 2012))); *Sunbelt Rentals, Inc. v. Love*, No. 20-17611, 2021 WL 82370, at *24 (D.N.J. Jan. 11, 2021) (stating that customer lists, among other things, "indisputably constitute[] trade secrets"); *PeopleStrategy, Inc. v. Lively Emp. Servs., Inc.*, No. 20-2640, 2020 WL 7869214, at *4 (D.N.J. Aug. 28, 2020) ("Trade secrets, under . . . the DTSA, include proprietary business information like customer lists. . . ."); *Corp. Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *4 (D.N.J. Aug. 12, 2019) ("Customer lists . . . constitute trade secrets under . . . the DTSA.").

   Here, Plaintiff has demonstrated a reasonable likelihood that its Customer List constitutes a trade secret.  (D.E. 21-3 ¶¶ 4–5.)  First, Orient has shown that the Customer List has independent economic value:  Orient uses the Customer List to maintain "unique access to repeat customers" and to eventually sell "additional Orient carpets in the United States" to those customers.  (*Id.* ¶ 8.)  Second, Orient has adequately set forth its reasonable efforts to keep the Customer List secret.  Specifically, Orient maintained the Customer List only in electronic form with two levels of

password protection, (*id.* ¶ 6); kept the password-protected computer on which the Customer List was stored disconnected from the Internet and printers, (*id.*); limited access to the Customer List to only two employees and explicitly "order[ed] those employees to hold the information in strict confidence," (*id.*); and took additional steps to protect the information on the Customer List from disclosure during the shipping process, (*id.* ¶ 7). Accordingly, Orient has established a reasonable likelihood that the Customer List derives independent economic value from not being generally available to others and that Orient reasonably endeavors to maintain the Customer List's confidentiality.

### b. Misappropriation

Orient has also established a reasonable likelihood that Defendants used the Customer List without Orient's consent. *Thanoo*, 999 F.3d at 907–08. Although "[t]he DTSA does not define the term 'use,'" the Third Circuit has explained that it should be given an "expansive interpretation"—that is, "'use' of a trade secret encompasses all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as 'assist[ing] or acceleratin[ing] research or development.'" *Id.* at 908, 910 (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450–51 (5th Cir. 2007)).

Here, Orient has shown that Kucukkaraca, Orient's former employee who had access to the Customer List, acquired it without consent, (D.E. 21-3 ¶¶ 11–14); that, thereafter, the Individual Defendants—claiming to be salespeople for Orient—used the Customer List to target Orient's U.S. customers and attempt to sell them carpets that were purportedly from Orient, (*id.* ¶¶ 13–16, 22, 24–26); that the carpets that the Individual Defendants were advertising were not from Orient but, in fact, were carpets provided to them by Orient's competitors, Aytek and Istanbul

11

Rugs, (*id.* ¶ 24); and that Aytek and Istanbul Rugs actively partook in the scheme by, at a minimum, providing the Individual Defendants with carpets and vehicles. (D.E. 21-4 ¶¶ 4–8; D.E. 27-2 at 2–19.) Accordingly, under the Third Circuit's expansive interpretation of "use," Orient has established that it is reasonably likely to prove that the Defendants have misappropriated Orient's Customer List.

Defendant Aytek argues that this Court should not issue an injunction because "Aytek does not have the customer list . . . [and] the alleged accusations found in [P]laintiff's declarations are against Istanbul Rugs, LLC and not against Aytek." (D.E. 25-1 ¶¶ 3–5.) Istanbul Rugs similarly argues that it is not in possession of Orient's Customer List. (D.E. 26 at 2.) Defendants' arguments miss the mark. First, liability for misappropriation of a trade secret does not turn on whether a party has actual possession of the trade secret. Orient need only show a reasonable likelihood that Defendants *used* the trade secret, which includes "tak[ing] advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose." *Thanoo*, 999 F.3d at 910. Orient has adequately shown a reasonable likelihood that Aytek and Istanbul Rugs—through actions by their agents, the Individual Defendants—used the Customer List to gain an economic advantage, *i.e.*, to trick Orient's customers into buying carpets from Aytek and Istanbul Rugs. Second, contrary to Aytek's contention that Orient's accusations are "not against Aytek," Orient has provided enough circumstantial evidence to implicate Aytek in the scheme. Specifically, Orient has shown that Aytek consigned several carpets to Aslanhan, and that the Individual Defendants provided Orient's U.S. customers with Aytek's contact information. (D.E. 21-3 ¶ 18; D.E. 27-2 at 2–19.) As the Third Circuit has explained, "[m]isappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial

evidence. . . ." *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985) (quoting *Greenberg v. Croydon Plastics Co.*, 378 F. Supp. 806, 814 (E.D. Pa. 1974)); *see also Thanoo*, 999 F.3d at 910 ("The implication of use . . . can flow from circumstantial evidence alone." (citing *Heisley*, 753 F.2d at 1261)). Here, Orient has set forth such circumstantial evidence, and accordingly, it has established a reasonable likelihood of success on the merits of its DTSA claim.

### B. Irreparable Harm[10]

Orient has further demonstrated that it will experience irreparable harm in the absence of an injunction. The moving party has the burden of establishing immediate irreparable injury— that is, it "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting plaintiff from the harm." *Holland v. Rosen*, 277 F. Supp. 3d 707, 725 (D.N.J. 2017) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). The Third Circuit has "long held that an injury measured in solely monetary terms cannot constitute irreparable harm." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009). Loss of customer goodwill and damage to reputation, however, are valid grounds for finding irreparable harm. *Groupe SEB USA, Inc.*, 774 F.3d at 205 (holding that damage to brand reputation and goodwill constitutes irreparable harm); *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." (citing *Opticians Ass'n of Am.*, 920 F.2d at 378)). "[A]n intention to make imminent or continued use of a trade secret . . . will almost certainly show immediate irreparable harm." *Campbell Soup Co. v. Conagra Inc.*, 977 F.2d 86, 92–93 (3d Cir. 1992).

---

[10] Defendants' largely do not contest Orient's contention that it has experienced, and will continue to experience, irreparable harm. (*See generally* D.E. 25, 26.)

Here, Orient has set forth sufficient evidence to establish irreparable harm. Orient has provided several emails from its customers, which illustrate that the Individual Defendants have repeatedly conducted a bait-and-switch campaign directed at Orient's customers on the Customer List. (D.E. 21-3 ¶ 30.) This scheme has led several of Orient's customers to believe that the Individual Defendants were selling Orient's carpets, when in fact they were attempting to sell carpets from only Defendants Aytek and Istanbul Rugs. (*Id.* ¶ 24–25.) As a result, the Individual Defendants sold carpets from Aytek and Istanbul Rugs to at least five of Orient's U.S. customers who believed the carpets were from Orient, and other Orient customers exchanged their older Orient carpets for newer carpets that they believed were from Orient but were in fact carpets from Aytek and Istanbul Rugs. (*Id.* ¶ 24.) According to Orient, its customers have now lost trust in Orient's brand and thus are reluctant to buy carpets from Orient in the future. (*Id.* ¶ 25.) This Court finds that Orient has shown irreparable harm—*i.e.*, that Defendants' actions have tarnished Orient's brand reputation and customer goodwill, and deprived Orient of business opportunities.

### C. Balance of Hardships and the Public Interest

Once a plaintiff has shown both a likelihood of success on the merits and irreparable injury, the district court turns to the third and fourth factors: the balance of the parties' relative harms and the public consequences. This Court must weigh "the potential injury to the plaintiffs without this injunction versus the potential injury to defendant with it in place." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) (quoting *Novartis Consumer Health, Inc.*, 290 F.3d at 596). In other words, "[i]f granting the injunction will cause greater harm to the [d]efendant than the [p]laintiff would suffer if the injunction were denied, the Court should generally not grant the injunction." *Carlini v. Velez*, 947 F. Supp. 2d 482, 488 (D.N.J. 2013) (quoting *Sorber v. Velez*, No. 09-3799, 2009 WL 3491154, at *3 (D.N.J. Oct. 23, 2009)). Then, this Court must balance the

"public consequences in employing the extraordinary remedy of injunction."[11] *Holland*, 277 F. Supp. 3d at 725 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Here, the harm to Orient is clear. In the absence of a preliminary injunction, the Defendants' scheme will continue to erode Orient's brand, reputation, and goodwill. Defendants have offered only one countervailing interest: that Istanbul Rugs would be unduly restricted from competing in the "free-market economy" because it would be unable to ascertain to whom it can sell its carpets. (D.E. 26 at 2.) That argument is unavailing. Aytek and Istanbul Rugs are free to compete against Orient, but they must do so lawfully—*i.e.*, without relying on misappropriated trade secrets and falsely advertising the origin of their carpets. *See, e.g.*, *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 230 (D.N.J. 2009). Defendants' legitimate sales of carpets to Orient's former customers will not violate the preliminary injunction. Accordingly, the balance of harm to the parties weighs in favor of granting the Motion.

**D. Security for Potentially Wrongful Injunction**

Rule 65(c) provides that courts "may issue a preliminary injunction . . . *only if* the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The injunction bond 'provides a fund to use to compensate incorrectly enjoined defendants.'" *Sprint Commc'ns Co. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 240 (3d Cir. 2003) (quoting *Instant Air Freight Co.*, 882 F.2d at 804). District courts have discretion to determine the amount of the bond, however, "the posting requirement is much less discretionary." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010) (quoting *Frank's GMC Truck Ctr., Inc. v. Gen. Motors*

---

[11] "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Winback*, 42 F.3d at 1427 n.8.

*Corp.*, 847 F.2d 100, 103 (3d Cir. 1988)).  Although the Third Circuit has recognized "an extremely narrow exception" to the bond requirement "when complying with the preliminary injunction 'raises no risk of monetary loss to the defendant,'" *id.* (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210 (3d Cir. 1990)), it "ha[s] never excused a District Court from requiring a bond where an injunction prevents commercial, money-making activities," *id.*

Here, this Court finds that Orient must post a bond.  Orient contends that the posting requirement should be excused because the injunction would allow Defendants to carry on their legitimate business practices and requires only that Defendants cease wrongful actions. (D.E. 21-1 at 25–26.)  Defendants' conduct, however improper it may prove to be, unquestionably constitutes "commercial, money-making activities" for which the Third Circuit has never excused a bond. *Zambelli Fireworks*, 592 F.3d at 426.  And at this nascent stage of the litigation, liability has not yet been determined.  For the duration of the injunction, all or some of the Defendants may incur costs, and if the injunction is found to have been unwarranted, those costs, too, will have been unnecessary.[12]  This is precisely the reason for the bond requirement.  *See Sprint Commc'ns*, 335 F.3d at 240 ("The injunction bond 'provides a fund to use to compensate incorrectly enjoined defendants.'").

Defendants, however, have not provided an estimate of the appropriate bond amount. Indeed, central to Aytek's and Istanbul Rugs' arguments is that they have neither misappropriated the Customer List, nor conspired with the Individual Defendants. (D.E. 25-1; D.E. 26.) Defendants, then, will suffer little, if any, harm "if the Court enjoins them from activities they already abstain from." *Richardson v. Cascade Skating Rink*, No. 19-8935, 2022 WL 833319, at

---

[12] For instance, in light of the injunction here, Aytek and Istanbul Rugs may expend resources to investigate the actions of their purported agents, or they may forgo certain business opportunities to ensure that they do not inadvertently violate the injunction.  In either case, Defendants may experience some damages or opportunity costs.

\*7 (D.N.J. Mar. 21, 2022). Accordingly, because Defendants "stand[] to lose little or nothing, financially speaking, from an erroneous injunction," *HR Staffing Consultants, LLC v. Butts*, No. 15-3155, 2015 WL 5055624, at \*2 (D.N.J. Aug. 25, 2015), this Court finds that Orient must post a bond in the amount of $1,000 deposited with the Clerk of Court.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion is **GRANTED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
James B. Clark, U.S.M.J.