<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORIENT TURISTIK MAGAZACILIK SAN VE TIC LTD. STI,<br><br>                Plaintiff,<br><br>v.<br><br>AYTEK USA, INC. d/b/a AYTEK RUGS; UMIT KUCUKKARACA; MUSTAFA ASLANHAN; and JOHN DOES 1-10,<br><br>                Defendants. | Civil Action No: 22-4864 (SDW) (JBC)<br><br>**OPINION**<br><br>May 13, 2025 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Orient Turistik Magazacilik San Ve Tic LTD. STI's ("Orient or "Plaintiff") motion for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 (D.E. 82 ("MSJ")).  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 1367.  Venue is proper pursuant to 28 U.S.C. § 1391(b).  This opinion is issued without oral argument pursuant to Rule 78.

Plaintiff moves for summary judgment on Count Three (Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA")) and Count Six (Violation of the New Jersey Trade Secrets Act, N.J. Stat. Ann. § 56:15-1 et seq. ("NJTSA"))[1] of its eight-count complaint.  For the reasons stated herein, Plaintiff's MSJ is **DENIED**.

---

[1] Count Six of the operative complaint asserts a claim for misappropriation of trade secrets under various state laws, including the New Jersey Trade Secrets Act.  In their briefing, however, the parties address this claim solely under the NJDTSA, and this Court does the same here.

I.     **FACTUAL BACKGROUND**[2]

This Court is called upon to untangle a dispute concerning Turkish rugs. Orient is a carpet dealer based in Istanbul, Turkey that traces its roots back to an 1880s family-owned business. Over the years, Orient developed a very positive reputation in the carpet trade and, in 2003, began to compile a list of its customers that lived in the United States (the "Customer List"). The Customer List grew to more than 8,000 entries consisting of customer names, email addresses, phone numbers, and residential addresses.

Defendant Umit Kucukkaraca ("Kucukkaraca") was employed by Orient as a sales representative from January 2015 to January 2022. (Pl.'s SMF ¶ 20.) Upon the termination of his employment, Orient claims that Kucukkaraca retained access to the contents of the Customer List in some way (*Id.* ¶ 23) and, beginning in April 2022, travelled with Defendant Mustafa Aslanhan ("Aslanhan" and, together with Kucukkaraca, the "Individual Defendants") across the United States, using the Customer List to contact Orient's customers for the purpose of selling rugs from Defendants Aytek USA, Inc. d/b/a Aytek Rugs ("Aytek" or "Defendant") and Istanbul Rugs, LLC. (*Id.* ¶ 25.) Aslanhan was personally close to Ayhan Teker ("Ayhan"), the owner of Aytek, and reached out to him in February 2022 to acquire rugs on consignment. (*Id.* ¶ 31–32.) Aslanhan picked up the rugs from Aytek's store in New Jersey, and the Individual Defendants made scheduled and unannounced visits to customers' residences and misrepresented to these customers that they were selling Orient carpets at a discount as part of a promotion. (*Id.* ¶ 26.) Orient discovered the above activities after numerous customers reached out to them with concerns, and

---

[2] Facts cited in this opinion are drawn from Plaintiff's Statement of Material Facts (D.E. 85 ("Pl.'s SMF")) and Defendant's responses thereto. (D.E. 87.)

sent Aytek a cease-and-desist letter that was never responded to.  (*Id.* ¶ 39; 43.)  Orient subsequently filed this action.

## II.    PROCEDURAL HISTORY

On August 3, 2022, Plaintiff filed an 8-count complaint against Aytek, Istanbul Rugs, LLC ("Istanbul Rugs"), and the Individual Defendants.  (D.E. 1 ("Complaint").)  Aytek answered (D.E. 14) and Istanbul Rugs moved to dismiss (D.E. 13) the Complaint.  On October 28, 2022, Orient moved for a preliminary injunction (D.E. 21), which this Court granted in an opinion and order dated May 18, 2023.  (D.E. 47–48.)  Following a stipulation (D.E. 40), Plaintiff filed an amended complaint (D.E. 42), which added Defendants Haluk Ilikyel, Alper Yildirim, and Mehmet Mamir[3] and mooted Istanbul Rugs, LLC's motion to dismiss.  Plaintiff filed its partial MSJ after extensive discovery, and Plaintiff dismissed its claims against Istanbul Rugs, LLC in a consent order that included a permanent injunction entered by this Court.  (D.E. 97; 99.)

## III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could

---

[3] Neither these Defendants nor the previously-mentioned Individual Defendants have appeared in this action.  Plaintiff filed numerous motions related to service for the Individual Defendants and have been granted the clerk's entry of default as to Kucukkaraca.  (D.E. 53.)

return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Where, as here, the plaintiff moves for summary judgment on its own claims, it must establish that no reasonable jury could find for the defendant with respect to each element of the claim at issue, or that no genuine dispute exists as to any asserted defense. *See United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011). If the moving party meets this burden, the burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (citation omitted). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. In considering a motion for summary judgment, this Court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 656–57 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255).

## IV.    <u>DISCUSSION</u>

Both the DTSA and the NJTSA require that a plaintiff "demonstrate (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019) (citing 18 U.S.C. §§ 1836(b)(1), 1839(3), (5); N.J. Stat. Ann. § 56:15-2). Because the two statutes are substantially similar and include identical or nearly identical definitions for each of the statutory terms at issue here, this Court analyzes the two claims together and arrives at the same conclusion for Plaintiff's claims under both statutes. *See e.g., Corporate Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *3 (D.N.J. Aug. 12, 2019); *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 n.11 (3d Cir. 2021)*.

As an initial matter, this Court granted a preliminary injunction nearly two years ago, on May 18, 2023. That determination plays no part in this Court's analysis at the summary judgment stage, and Plaintiff is misguided to the extent any dispositive significance is imputed from the prior ruling. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016) (holding that "the standards governing a motion for a preliminary injunction and a motion for summary judgment are entirely different"); *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006) (holding that the manner in which a district court addresses a motion for preliminary injunction "is irrelevant" to the manner in which a later-filed summary judgment motion is addressed, as there is a "distinction between the standards for summary judgment and preliminary injunction"). At the preliminary injunction stage, this Court relied on inferences and conclusions that are now irrelevant and/or clarified with discovery having taken place. *See Doebler*, 442 F.3d at 820

(holding that the inferences that "were previously made in ruling on [a] motion for preliminary injunction cannot determine [a] Rule 56(c) motion").

### A. Existence of a Trade Secret

This Court must first address whether a trade secret existed at all. Under the DTSA, the term "trade secret" means:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
>> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>>
>> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). "The essential inquiry for a trade secret is whether the information derives economic value, the information is not readily ascertainable by other means, and the holder endeavors for it to remain confidential." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 355 (D.N.J. 2019) (internal quotation marks and citation omitted). Critical to the confidentiality analysis is whether the plaintiff has "taken precautions to maintain the secrecy of the trade secret." *Id.* (quoting *Mu Sigma, Inc. v. Affine, Inc.*, No. 12-1323, 2013 WL 3772724, at *8 (D.N.J. July 7, 2013)). The test to determine whether a plaintiff took steps to maintain the confidentiality of the trade secret is one of reasonableness. *See Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 11-1857, 2012 WL 5554543, at *9 (D.N.J. Nov. 14, 2012). As such, an inquiry into secrecy is a "quintessential question of fact." *Baxter Healthcare Corp. v. HW Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 425 (D.N.J. 2016).

Here, Orient contends that its Customer List qualifies for trade secret protection.  It is well-established that customer lists have long been recognized as a type of information that can qualify as a trade secret under the DTSA and NJTSA.  *See, e.g., Sunbelt Rentals, Inc. v. Love*, No. 20-17611, 2021 WL 82370, at *24 (D.N.J. Jan. 11, 2021) (stating that customer lists, among other things, "indisputably constitute[] trade secrets").  Indeed, Aytek does not appear to dispute that the Customer List might qualify for trade secret protection had Orient taken sufficient steps to maintain its confidentiality.  Thus, the core dispute is whether Orient sufficiently protected its Customer List.  Here, there are simply too many factual disputes to resolve this question on summary judgment.  The parties seem to agree that, at the very least, the Customer List was maintained in electronic form on a password-protected computer with a separate password needed to access the file.  (Pl.'s SMF ¶ 9.)  They also agree that Plaintiff did not have any confidentiality agreements with their employees, including Kucukkaraca.  (*Id.*; *see also* Plaintiff's Reply Brief (D.E. 91) at 8.)  Plaintiff contends that it limited the employees who had access to these passwords and ordered that they hold the information in strict confidence.  (Pl.'s SMF ¶ 9.)  Defendant points to deposition testimony to support its contention that Orient moved the Customer List from one computer to another and allowed non-employees to have access.  (*See* Exhibits A & B to Def's Brief (D.E. 86-3; 86-4).)

On this record, Plaintiff has not sustained its burden, as genuine disputes remain over whether it took reasonable steps to protect the secrecy of the Customer List.  The presence of password protection, while relevant to the analysis, is essentially more of a bare minimum protection than a dispositive fact for Plaintiff.  *See Softchoice Corp v. MacKenzie*, 636 F. Supp. 2d 927, 939–40 (D. Neb. 2009) (finding password protection, firewalls, and locks were "nothing more than the ordinary precautions").  And while Plaintiff may ultimately prevail on the issue despite

the lack of any confidentiality agreements, it certainly is a relevant omission that this Court must consider when determining whether Plaintiff has carried its burden. *See Alpha Pro Tech v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 437–38 (E.D. Pa. 2013) (analysis of whether reasonable steps were taken "requires consideration of, but not entire reliance on, confidentiality agreements, which are but one factor of the analysis"). When combined with the factual disagreements over who had access to the Customer List, such an omission precludes summary judgment in Plaintiff's favor on the question as to whether the Customer List had trade secret protection under the law. In short, like most trade secret cases, this is one where the question of whether the Customer List was sufficiently protected is "best resolved by a fact finder after full presentation of evidence from each side," and not by this Court on summary judgment. *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 79 (D.D.C. 2007) (citations and quotations omitted); *see also Baxter Healthcare Corp.*, 157 F. Supp. 3d at 426 ("In sum, given the parties' genuinely conflicting accounts, the ultimate determination of the existence of trade secrets must be reserved for the factfinder.")

## B. Misappropriation

Notwithstanding that summary judgment can be denied solely on the unresolved factual disputes, this Court also addresses the parties' arguments concerning misappropriation for the sake of completeness.

Under the DTSA and NJTSA, misappropriation occurs where a person acquires a trade secret by improper means, or discloses or uses a trade secret without consent when they knew or had reason to know it was acquired by improper means, was subject to a duty to maintain its secrecy, or was obtained from someone who owed such a duty. 18 U.S.C. § 1839(5); N.J.S.A. 56:15-2; *see also Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 355 (D.N.J. 2019). Even assuming that Plaintiff had conclusively established that it took reasonable steps to maintain

the secrecy of the Customer List, there are genuine issues of material fact as it relates to Aytek's involvement in any misappropriation that the Individual Defendants may have committed.

While Plaintiff points to evidence suggesting that Aytek knew and communicated with the Individual Defendants alleged to have improperly taken and used the Customer List, the evidentiary record does not conclusively establish that Aytek knew — or had reason to know — that the Individual Defendants were using Orient's confidential customer information in their dealings with Aytek.  Notably, Plaintiff does not point to any evidence showing that Aytek was aware the customers that were purchasing their rugs through these consignors originated from Orient's Customer List.  And while it is true that "misappropriation and misuse can rarely be proved by convincing direct evidence," logic does not necessarily dictate that Aytek did ask or should have asked to whom the Individual Defendants were selling their products.  *Ho-Ho-Kus, Inc. v. Sucharski*, No. 23-01677, 2023 WL 7403539, at *8 (D.N.J. Nov. 9, 2023) (citing *SI Handling Sys. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985)).  While the evidentiary record does support the fact that Ayhan had a longstanding business relationship with Aslanhan, Ayhan denied knowing that Aslanhan was using the Customer List and denied knowing Kucukkaraca altogether.  On this record, it is not inherently unreasonable for a retail rug business like Aytek to consign inventory without inquiring into the specific channels through which consignors market their customers, particularly in an industry where informal and longstanding relationships are commonplace.

This case presents an added complication: the Individual Defendants alleged to have stolen and used the Customer List are overseas and have not appeared in this action or participated in discovery.  As a result, critical evidentiary gaps remain regarding how the Customer List was obtained, how it was retained, and what knowledge, if any, Aytek had of its origin.  While there is

deposition testimony confirming that Defendant has a longstanding relationship with Aslanhan[4], and while circumstantial evidence suggests that the Individual Defendants used the Customer List, the record stops short of conclusively establishing that Aytek knew or should have known the list was improperly acquired.  Because a reasonable jury could conclude that Aytek did not misappropriate the Customer List, summary judgment is inappropriate.  The conflicting testimony and circumstantial evidence create a quintessential jury question as to what Aytek and Ayhan knew or should have known about the provenance of the customers and the alleged misuse of Orient's confidential information.

### C. Damages

Having resolved the MSJ on the issues of the existence of a trade secret and misappropriation, this Court declines to delve into Plaintiff's computation of damages.  As with liability, the issue of damages, including the valuation of each customer name on the list and the apportionment among the several defendants, involves fact-intensive inquiries and credibility determinations that are best left to a jury.

---

[4] While Plaintiff raises salient points suggesting discrepancies and inconsistencies in Ayhan's deposition testimony, those issues are not sufficient to conclusively establish misappropriation at the summary judgment stage.  Such credibility determinations and the resolution of conflicting testimony are matters appropriately left to the jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [s]he is ruling on a motion for summary judgment or for a directed verdict."); *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) ("In considering a motion for summary judgment a District Court may not make credibility determinations . . .").

## V.     <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's MSJ is **DENIED**.[5]  An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      James B. Clark, U.S.M.J.
         Parties

---

[5] After discovery, Plaintiff has failed to identify the names of the fictitiously named defendants.  Therefore, this Court dismisses John Does 1–10 pursuant to Rule 21.  *McCrudden v. United States*, 763 F. App'x 142, 145 (3d Cir. 2019) ("The case law is clear that [f]ictitious parties must eventually be dismissed, if discovery yields no identities." (alteration in original) (quoting *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998))); Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").